UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUSTAVE WILLIAM LINK, a disabled Pile Drivers Local 34 Union member,

        Plaintiff,

  v.

DAVID RHODES, President, Pile Drivers Local 34 Union; PAT KARINEN, Secretary, Pile Drivers Local 34 Union; JIMMY JOHANSEN, Business Agt., Pile Drivers Local 34 Union; DAN MURRAY, Recording Sec., Pile Drivers Local 34 Union; STEVE TILTON, Vice-President, Pile Drivers Local 34 Union; TERRY CALLAN, District Coordinator, Pile Drivers Local 34 Apprenticeship Training; JOHN BULLOCK, Executive Dir., Carpenters Training Committee for Northern California Appeals Committee; ROBERT ALVARADO, Executive Officer, Northern California Carpenters Regional Council (NCCRC); DOUGLAS McCARRON, President, United Brothers of Carpenters (Washington D.C.); SANDRA RAE BENSON, Union Attorney; LAW FIRM WEINBERG, ROGER & ROSENFELD; and JOHN DOE,

        Defendants.

No. C 06-0386 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motion to Dismiss**

        Plaintiff Gustave William Link filed this action against David Rhodes, Pat Karinen, Jimmy Johansen, Dan Murray, Steve Tilton (collectively, "the local union defendants"), Terry Callan, John Bullock, Robert Alvarado (collectively, "the committee defendants")[1], Douglas McCarron ("the international union defendant"), Sandra Rae Benson and the law firm of Weinberg, Roger & Rosenfeld (collectively, "the law firm defendants"), seeking damages arising out of defendants' alleged retaliation against plaintiff for publicly criticizing local union officials for their failure to

adequately represent the interests of union members. Now before the court is defendants' motion to dismiss plaintiff's complaint for failure to state a claim on which relief can be granted. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[2]

Link was a member of the Pile Drivers Local 34 Union. Compl. ¶ 1. He received training as a pile driver through the Carpenters Training Committee for Northern California ("training committee"), a joint labor-management sponsored apprenticeship training program. Id., Exh. H (student history report). As an apprentice pile driver and member of the local union, Link was employed by KFM Joint Venture ("KFM") to perform construction work on the San Francisco Bay Bridge Project. Id. ¶ 1.

Link claims that he was subjected to excessive levels of manganese while working on the San Francisco Bay Bridge Project, which caused him to develop a heart condition. Id. ¶ 25, 28. Due to the allegedly unsafe working conditions at the Bay Bridge Project, Link began to criticize union officials at local union meetings in 2004 for their failure to collectively bargain in good faith against KFM concerning safety complaints filed by union members. Id. ¶ 13. Link also contacted the FBI and the Oakland Tribune about the alleged refusal of union officials to address the safety complaints filed by union members with Cal-OSHA. Id. ¶¶ 14–16. Additionally, Link filed a complaint with the Northern California Carpenters Regional Council against local union officials Rhodes, Karinen and Johansen for their failure to address the safety violations by KFM. Id., Exh. A. However, Link subsequently withdrew this complaint. Id., Exh. D.

Due to his heart condition, Link went on disability leave in the summer of 2004. Id., Exh. H. The training committee then placed Link on Inactive-Medical Extended Leave for a maximum of six months. Id., Exh. J. The training committee informed Link that if he failed to submit a medical release within ninety days of being placed on medical leave, he would be terminated from the apprenticeship program for inability to participate in the required training. Id. Link never obtained

2

a medical release. Pl.'s Opp'n at 8. On July 21, 2005, the training committee informed Link that he had been terminated from the apprenticeship program because he failed to complete a scheduled class. Compl., Exh. O. Link requested that the training committee reconsider its decision to terminate him, but his request was denied. Id., Exh. P. Link then appealed the training committee's decision; his appeal was similarly denied. Id. ¶ 37. Link's termination from the apprenticeship program caused his membership in the Pile Drivers Local 34 Union to be terminated. Id. ¶ 1.

Link claims that he was terminated from the apprenticeship program because he was disabled. Id. According to Link, defendants also conspired to terminate him from the apprenticeship program—resulting in the termination of his union membership—in retaliation for criticizing union officials for their failure to collectively bargain against KFM concerning safety complaints made by union members working on the San Francisco Bay Bridge Project. Id. ¶ 40. Link claims that this alleged retaliation was also spurred on by the fact that Link was a "whistleblower," as he informed the FBI and the Oakland Tribune about these issues. Id. ¶ 13.

On January 20, 2006, Link filed this lawsuit, alleging constitutional violations, disability discrimination, violations of the Labor-Management Relations Act, violations of the Labor Management Reporting and Disclosure Act, breach of fiduciary duty, breach of union contract, legal malpractice, violations of the California Labor Code, negligence and conspiracy. Defendants now move to dismiss Link's complaint in its entirety.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in

3

evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.), cert. denied, 484 U.S. 944 (1987). In addition, pursuant to Federal Rule of Evidence 201, "a court may take judicial notice of 'matters of public record'" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001) (quoting Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

In the case of a pro se plaintiff, the court is to construe the complaint with even greater liberality than it would formally drafted pleadings. Hughes v. Rowe, 449 U.S. 5, 9 (1980).

DISCUSSION

I. Local Union Defendants', Law Firm Defendants', and Training Committee Defendants' Motion to Dismiss[3]

The local union defendants, law firm defendants and training committee defendants seek to dismiss all of plaintiff's claims for relief based on a variety of alleged deficiencies. The court will consider each claim in turn.

4

A.     Constitutional Violations

Link claims that all of the defendants violated his First, Fifth and Fourteenth Amendment rights by conspiring to terminate him from the apprenticeship program in retaliation for criticizing union officials for failing to collectively bargain with KFM Joint Venture. Link cannot bring these constitutional claims against any of the defendants because Link does not allege or establish that any of the defendants are state actors. See Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989) (noting that the Fourteenth amendment, and the First amendment incorporated therein, apply only to state acts, not private conduct (citation omitted)), cert. denied, 493 U.S. 1056 (1990); Geneva Towers Tenants Org. v. Federated Mortgage Investors, 504 F.2d 483, 487 (9th Cir. 1974) (holding that "[t]he Due Process Clause of the Fifth Amendment applies to and restricts only the federal government and not private persons." (citing Public Utils. Comm'n v. Pollak, 343 U.S. 451, 461 (1952))). Thus, Link's constitutional claims must be dismissed with prejudice.

B.     Labor-Management Relations Act

Link also brings a claim against defendants under section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. section 185. The gravamen of Link's claim under the LMRA is that defendants breached the duty of fair representation by failing to collectively bargain in good faith against KFM Joint Venture over safety complaints filed by members—including Link—of the Pile Drivers Local 34 Union in 2003, 2004 and 2005.

1.     Local Union Official Defendants

As a threshold issue, the local union official defendants argue that Link cannot maintain an action against them under section 301 of the LMRA for acts performed in their representative capacities.

Link's duty of fair representation claim against the local union official defendants for their failure to collectively bargain in good faith against KFM fails because a damage claim may not be brought against individual union officials under section 301 of the LMRA. See Atkinson v. Sinclair

Ref. Co., 370 U.S. 238, 248 (1962) (stating that section 301(b) of the LMRA "exempts agents and members from personal liability for judgments against the union (apparently even when the union is without assets to pay the judgment)."); see also Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 407 (1981) (noting that "the legislative history of § 301 clearly reveals Congress' intent to shield individual employees from liability for damages arising from their breach [of a collective bargaining agreement] . . . whether or not the union participated in or authorized the illegality."); Peterson v. Kennedy, 771 F.2d 1244, 1257–58 (9th Cir. 1985) ("It has long been recognized that union officers and employees are not individually liable to third parties for acts performed as representatives of the union in the collective bargaining process."), cert. denied, 475 U.S. 1122 (1986); Carter v. Smith Food King, 765 F.2d 916, 920–21 (9th Cir. 1985) ("It is well settled that section 301 provides the basis for an action for breach of the duty of fair representation only against a union as an entity, and not against individuals who happen to hold positions in that union." (citations omitted)).  Thus, Link's section 301 claim must be dismissed with prejudice as against the local union defendants.

### 2. Law Firm Defendants

Link also brings his section 301 claim against the law firm defendants, alleging that Benson and the firm of Weinberg, Roger & Rosenfeld have "provid[ed] ineffective legal representation to union members for the past 5 years in arbitration and grievances." Compl. ¶ 11.  The law firm defendants contend that Link cannot maintain an action against them under section 301 of the LMRA because the alleged actions which gave rise to plaintiff's claim were performed in their capacities as counsel for the Pile Drivers Local 34 Union, the Local 34 Apprenticeship Program and the Northern California Carpenters Training Committee.  The court agrees, as it is well established that "attorneys who perform services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services the attorneys perform constitute a part of the collective bargaining process." Peterson, 771 F.2d at 1256.  Thus, Link's section 301 claim must be dismissed with prejudice as against the law firm defendants.

### 3. Committee Defendants

Link further alleges that the committee defendants are liable for breaching the duty of fair representation. However, there is no authority for holding individual employees or officers of a joint labor-management committee—such as the Carpenters Training Committee for Northern California—liable for damages under section 301 of the LMRA. Indeed, the court finds that it would be illogical to hold individual employees or officers of a joint labor-management committee liable under section 301, given that this section shields union officers, agents and representatives from personal liability. Consequently, Link's section 301 claim is dismissed with prejudice as against the individual committee defendants.

The court also notes that at least one court has found section 301 inapplicable to joint labor-management committees. Ramsey v. Signal Delivery Serv., Inc., 631 F.2d 1210, 1211 (5th Cir. 1980) ("The Committee is not a legal entity, being neither an unincorporated association, an 'employer,' or a 'labor organization' within the meaning of 29 U.S.C. s 185."). The Eastern District of California has cited Ramsey with approval, but only with respect to joint committees that play the role of an arbitrator. Goodwin v. Chauffeurs, Teamsters & Helpers, Union Local No. 150, No. S-78-659, 1982 WL 31333, 113 L.R.R.M. (BNA) 3029 (E.D. Cal. Jul. 7, 1982). The court does not express an opinion as to the applicability of Ramsey and Goodwin to the facts of this case, but calls the cases to the parties' attention for purposes of guiding plaintiff in filing his amended complaint.

### C. Americans With Disabilities Act

Link claims that all of the defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12101 et seq., by terminating him from the apprenticeship program because of his heart condition without first attempting to provide him with a reasonable accommodation. Defendants argue that Link's ADA claim must be dismissed under Rule 12(b)(6) because he cannot bring such a claim against third parties who do not qualify as "employers" under the Act.

The ADA applies to employers, employment agencies, labor organizations, and joint labor-management committees. 42 U.S.C. § 12111(2). The Ninth Circuit has not yet addressed whether

7

the ADA subjects an employer's agents—such as supervisors—who do not otherwise meet the statutory definition of "employer" to individual liability. However, district courts within the Ninth Circuit have repeatedly held that "an individual cannot be liable under the ADA, including an ADA retaliation claim." Cai v. Chiron Corp., No. C 04-1587 CRB, 2004 U.S. Dist. LEXIS 16833, at *12 (N.D. Cal. 2004) (Breyer, J.). See also Rohm v. Homer, 367 F. Supp. 2d 1278, 1284–85 (N.D. Cal. 2005) (Whyte, J.); Stern v. California State Archives, 982 F. Supp. 690, 692 (E.D. Cal. 1997) (holding that "[t]here is no individual liability [under the ADA] even where the supervisor is the employer's 'agent' . . . ." (citation omitted)). Thus, Link's ADA claims against all of the individual defendants must be dismissed with prejudice. Link's ADA claim against the law firm of Weinberg, Roger & Rosenfeld—which likely qualifies as an "employer" under the ADA—is also dismissed because Link has failed to allege or establish that the firm acted as his employer.

### D.   Labor Management Reporting and Disclosure Act

Link claims that all of the named defendants violated sections 101(a)(2) and 609 of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. sections 411(a)(2) and 529. Link claims that defendants violated the LMRDA by retaliating against him for exercising his "free speech" right to criticize union officials of the Pile Drivers Local 34 Union for their failure to collectively bargain against KFM. Compl. ¶ 13. Link alleges that he criticized officials of the Pile Drivers Local 34 Union at several union meetings, including a meeting held on January 27, 2005 at a location in Oakland. Id. ¶ 22. Link further claims that defendants conspired to terminate him from the apprenticeship program—which resulted in his dismissal from the Pile Drivers Local 34 Union—in retaliation for his criticisms of union officials. Defendants argue that Link's claim must be dismissed because Link has failed to "set forth any allegations that he was disciplined based on what he claims to be his free speech rights." Defendants further contend that Link's claim fails because he has not exhausted his administrative remedies.

The LMRDA addresses various abuses of power by union leaders. Title I of the Act, 29 U.S.C. sections 411–415, provides, among other things, equal rights, freedom of speech and

8

assembly, as well as safeguards against improper disciplinary action for union members. See 29 U.S.C. § 411; Bloom v. General Truck Drivers, 783 F.2d 1356, 1361 (9th Cir. 1986). "In providing such protections, Congress sought to further the basic objective of the LMRDA: 'ensuring that unions [are] democratically governed and responsive to the will of their memberships.'" Sheet Metal Workers' Int'l Ass'n v. Lynn, 488 U.S. 347, 352 (1989) (citing Finnegan v. Leu, 456 U.S. 431, 435 (1982)).

Section 101(a)(2) of the LMRDA, part of the "Bill of Rights of Members of Labor Organizations," provides: "Every member shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions . . . *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules." 29 U.S.C. § 411(a)(2). Section 609 of the LMRDA provides that a union and its officers and agents may not "fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this Act [the LMRDA]." 29 U.S.C. § 529.

Section 102 of the LMRDA, 29 U.S.C. section 412, provides a federal cause of action for violation of the rights provided for under sections 101(a)(2) and 609.[4] Casumpang v. ILWU, Local 142, 269 F.3d 1042, 1052 (9th Cir. 2001) (quoting Murray v. Laborers Union Local 324, 55 F.3d 1445, 1453 n.9 (9th Cir. 1995)), cert. denied, 535 U.S. 1078 (2002); see also 29 U.S.C. § 529. Only individual rank-and-file union members have standing to sue for violations of section 101(a)(2), Teamsters Joint Council No. 42 v. International Bhd. of Teamsters, 82 F.3d 303, 305 (9th Cir. 1996) (citation omitted), and they may bring suit against both their union and individual union officers to the extent that the officers "acted abusively with reference to their union duties." Aguirre v. Automotive Teamsters, 633 F.2d 168, 172 (9th Cir. 1980) (citations omitted). See also Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1246–47 (2d Cir. 1979) (holding that "a union official who aids abets, instigates, or directs a wrongful use of union power to deprive a member of his rights under § 101 may be held liable under § 102 . . . ."), cert. denied, 446 U.S. 919 (1980).

1    Although the Ninth Circuit has not squarely addressed the issue, courts in other circuits have held that the LMRDA only governs labor organizations and their officers and agents when acting in their representative capacities. Thompson v. New York Cent. R.R. Co., 361 F.2d 137, 145 (2d Cir. 1966); Tomko v. Hilbert, 288 F.2d 625, 628–29 (3d Cir. 1961); Farrell v. Hellen, No. 03 Civ. 4083 (JCF), 2004 U.S. Dist. LEXIS 3638, at *14 (S.D.N.Y. Mar. 10, 2004) ("A union member's free speech and due process rights are enforceable pursuant to 29 U.S.C. § 412, which has been interpreted as providing a right of action against individuals as well as labor organizations, but only where the individual defendant is an 'officer or agent [of the union] acting in his official capacity.'" (citation omitted)); Sullivan v. Crosley, Civ. No. 91-3335, 1992 U.S. Dist. LEXIS 16168, at *9 (E.D. Pa. Oct. 20, 1992) (finding that "the LMRDA does not provide a civil remedy for the vindication of LMRDA rights against one who, in allegedly violating such rights, is not acting in the capacity of an official, member or agent of a labor union."). Under the LMRDA, a "labor organization" is defined as an organization which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment . . . ." 29 U.S.C. § 402(i).

To state a claim under section 101(a)(2) of the LMRDA, the plaintiff must allege facts showing that "(1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) retaliatory action was a 'direct result of his or her decision to express disagreement' with the union's leadership." Casumpang, 269 F.3d at 1058 (citing Lynn, 488 U.S. at 354). Similarly, to state a claim under section 609, the plaintiff must allege that he was "disciplined" for exercising rights protected under section 101(a)(2). See 29 U.S.C. § 529. The Supreme Court has held that "the term 'discipline,' as used in section 609, refers only to retaliatory actions that affect a union member's rights or status *as a member* of the union." Finnegan, 456 U.S. at 437.

### 1. Local Union Official Defendants

1 Link alleges that the union official defendants conspired to terminate him from the Pile
2 Drivers Local 34 Union because he had criticized union officials for their failure to collectively
3 bargain against KFM.  Link claims that the union official defendants directed the committee
4 defendants to terminate Link from the apprenticeship training program, which resulted in the
5 termination of Link's union membership.  Thus, Link has stated a valid claim under section
6 101(a)(2) of the LMRDA, as he alleges that (1) he has exercised his right to oppose the union's
7 course of action with respect to KFM; (2) he was retaliated against by being terminated from the
8 apprenticeship program and the union; and (3) the retaliatory action was the result of his decision to
9 criticize the union officials.  See Casumpang, 269 F.3d at 1058.  Likewise, Link has stated a valid
10 claim under section 609, as he alleges that his union membership was terminated because he
11 exercised his protected right to criticize union leadership.

### a. Failure to Exhaust Administrative Remedies

Defendants argue that Link's LMRDA claim must be dismissed because Link has failed to exhaust his administrative remedies.  Section 101(a)(4) of the LMRDA, 29 U.S.C. section 411(a)(4), provides, in relevant part, that a union member may be required to exhaust reasonable intra-union remedies before bringing suit in federal court.  The district court has the discretion to "require exhaustion of intraunion remedies for up to four months . . ., although it may excuse the four-month requirement where the intraunion remedies would be inadequate or pursuit of them would be futile . . . ."  Kinney v. International Bhd. of Elec. Workers, 669 F.2d 1222, 1226 (9th Cir. 1981) (quoting Ornellas v. Oakley, 618 F.2d 1351, 1354 (9th Cir. 1980)).  The exhaustion requirement is "'most absolute where the complaints allege wrongdoing regarding internal union affairs.'"  Bise v. International Bhd. of Elec. Workers AFL-CIO Local 1969, 618 F.2d 1299, 1303 (9th Cir. 1979) (citation omitted), cert. denied, 449 U.S. 904 (1980).

This court "start[s] with the proposition that generally a member aggrieved by an act of his union must exhaust his intra-union remedies 'in the absence of a showing that it would be futile or that the remedies are inadequate.'"  Buzzard v. International Ass'n of Machinists & Aerospace

11

Workers, 480 F.2d 35, 41 (9th Cir. 1973) (quoting Frederickson v. System Fed. No. 114, Ry. Employees' Dept., 436 F.2d 764 (9th Cir. 1970)). Link alleges that he filed various charges in 2004 against the union official defendants with respect to their failure to collectively bargain against KFM. Compl. ¶¶ 17–21. However, Link has failed to allege or establish that he has attempted to pursue the claim he brings here—that he was terminated from the union in retaliation for exercising his protected rights—through formal, internal union channels. Because Link does not allege that his failure to exhaust intraunion remedies was due to the futility of pursuing such remedies, the court dismisses his LMRDA claim without prejudice as against the union defendants.

### 2. Law Firm Defendants

The basis for of Link's LMRDA claim against the law firm defendants—both Benson and the firm of Weinberg, Roger & Rosenfeld—is unclear. Link's allegation against these defendants appears to be that they violated sections 101(a)(2) and 609 by advising the union official defendants to terminate Link from the apprenticeship training program. Link's claim against the law firm defendants must be dismissed because an LMRDA claim may only be brought against a "labor organization" and its officers and agents. See Farrell, No. 03 Civ. 4083 (JCF), 2004 U.S. Dist. LEXIS 3638, at *14 (holding that "[t]here is no authority for holding a union's attorney liable for violating the LMRDA where the challenged conduct consisted of providing legal advice and otherwise performing the responsibilities of a lawyer.").

### 3. Committee Defendants

Link also alleges that the committee defendants violated the LMRDA by conspiring with the union official defendants to terminate Link from the apprenticeship program in retaliation for criticizing union officials. Link's LMRDA claim against the committee defendants fails as a matter of law because Link has not alleged or established that the various committees are "labor organizations" within the meaning of the LMRDA. Although there is some authority for the proposition that a committee may be held liable for violations of the LMRDA where the committee

is the "alter ego" of a labor organization, Link has not alleged or established that any of the committees are merely the alter ego of the Pile Drivers Local 34 Union. See Miller v. Holden, 535 F.2d 912, 914 (5th Cir. 1976), cert. denied, 436 U.S. 957 (1978). Link's claim fails even though he has alleged that the committee defendants conspired with the union official defendants to violate his free speech rights in violation of the LMRDA. See Duncan v. Peninsula Shipbuilders Ass'n, 394 F.2d 237, 240 (4th Cir. 1968) (holding that an employer—which did not qualify as a "labor organization"—that conspired with the union to effect the discharge of a union member could not be held liable under the LMRDA, although the union could be held liable for its "conspiratorial part."). See also Bass v. International Bhd. of Boilermakers, 630 F.2d 1058, 1066 (5th Cir. 1980) (holding that an apprenticeship training committee, structured as a joint labor-management committee, could not be held liable under the LMRDA where the committee had a legal identity separate from the union and did not qualify as a labor organization, as it had no members and did not deal with employers on behalf of employees); Sullivan, Civ. No. 91-3335, 1992 U.S. Dist. LEXIS 16168, at *12 (finding that a union member's LMRDA claim against employer-trustees of an apprenticeship fund failed as a matter of law because the apprenticeship fund was an entity independent from the union). Consequently, Link's LMRDA claim against the committee defendants is dismissed without prejudice.

E.   National Labor Relations Act

Link also claims that all of the named defendants violated section 8(b)(1)(A) of the National Labor Relations Act ("NLRA"), 29 U.S.C. section 158. Section 8(b)(1)(A) provides that "[i]t shall be an unfair labor practice for a labor organization or its agents--(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in [29 U.S.C. section 157]: Provided, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." Standalone claims alleging unfair labor practices are within the exclusive jurisdiction of the National Labor Relations Board: "federal courts do not have jurisdiction over activity which 'is arguably subject to § 7 or § 8 [29 U.S.C. §§

13

157–58] of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., 779 F.2d 497, 500 (9th Cir. 1985) (quoting Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 83 (1982)), cert. denied, 479 U.S. 1083 (1987); see also Cement Masons Health & Welfare Trust Fund etc. v. Kirkwood-Bly, Inc., 520 F. Supp. 942, 943 (N.D. Cal. 1981) (Peckham, J.) ("Suits alleging unfair labor practices that is, violations of 29 U.S.C. § 158 must be heard before the N.L.R.B.; district courts have no jurisdiction to consider these matters."), aff'd 692 F.2d 641 (9th Cir. 1982). Consequently, this court lacks jurisdiction over Link's NLRA claim.

The court notes, however, that the allegation of an unfair labor practice does not strip the court of jurisdiction over a properly pleaded claim under section 301 of the LMRA. "The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by [section 301 of the LMRA], but it is not exclusive and does not destroy the jurisdiction of the courts in suits under [section 301]." Smith v. Evening News Ass'n, 371 U.S. 195, 197 (1962). Thus, this court will retain jurisdiction over a properly pleaded claim under section 301. Plaintiff's claim under the NLRA is dismissed with prejudice.

F.      Pendent State Law Claims

Link also seeks relief under several pendent state law claims, including (1) breach of fiduciary duty, (2) fraud, (3) breach of contract, (4) negligence, (5) violation of section 132a of the California Labor Code; and (6) violation of section 6300 of the California Labor Code.

As a general matter, "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367–68 (9th Cir. 1992) (quoting Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984) (internal quotation marks omitted)). Given that Link's federal claims must be dismissed, the court declines to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction over a pendent state law claim if "the district court has dismissed all claims over which it has original jurisdiction.").

14

II.     International Union Defendant's Motion to Dismiss

Link also brings claims under the LMRA, ADA, LMRDA and various state law theories of liability against McCarron, the President of the United Brotherhood of Carpenters and Joiners of America ("UBC"). The basis of Link's claims against McCarron is unclear. Indeed, Link does not set forth any facts establishing that McCarron personally took action against Link that would violate either federal or state law. Rather, it seems that Link seeks to hold McCarron liable pursuant to a theory of vicarious liability for the alleged misconduct of the local union official defendants. McCarron argues that all of Link's claims should be dismissed as against him because Link has not alleged or established that an agency relationship exists between the international and local unions. Additionally, McCarron contends that Link's duty of fair representation claim should be dismissed because he is a union official who is shielded from personal liability for damages for a violation of section 301 of the LMRA.

1.     Vicarious Liability

The sole basis of Link's claims against McCarron seems to be that McCarron, as President of the UBC, should be held liable for the actions of the local union—Pile Drivers Local 34—and its officials. The general rule is that an international union cannot be held liable for the actions of one of its locals unless an agency relationship exists between the two entities. Laughon v. Int'l Alliance of Theatrical Stage Employees, 248 F.3d 931, 935 (9th Cir. 2001). In determining whether such an agency relationship exists, courts principally look to the nature and extent of the international union's actual control over the local. Id. (quoting Shimman v. Frank, 625 F.2d 80, 98 n.36 (6th Cir. 1980), cert. denied, 469 U.S. 1215 (1985)). More specifically, an international union will not be vicariously liable for the actions of one of its locals unless there is evidence that the international "instigated, supported, ratified or encouraged" the local's activities or the court determines that the local "acted pursuant to its agreement" with the international union. Moore v. Local Union 569 of the Int'l Bhd. of Elec. Workers, 989 F.2d 1534, 1543 (9th Cir. 1993), cert. denied, 510 U.S. 1117 (1994).

15

Here, Link does not allege or establish that an agency relationship existed between the international and local unions. Consequently, there is no basis for holding McCarron—the President of the international union—liable for the allegedly unlawful acts of the Pile Drivers Local 34 Union or its officials, especially given that Link does not allege that McCarron was personally involved in the actions giving rise to his complaint. In his reply brief, Link offers additional facts establishing an agency relationship between the international and local unions. However, for purposes of a motion to dismiss under Rule 12(b)(6), the court does not consider any facts not alleged on the face of the complaint, unless they are within the appropriate scope of judicial notice. Accordingly, Link's claims against McCarron are dismissed. To the extent that Link can properly allege that an agency relationship existed between the international and local unions, he may amend his claim.

### 2. Constitutional Violations

Because McCarron, as President of an international union, is a private as opposed to state actor, all of Link's constitutional claims against this defendant are dismissed with prejudice.

### 3. LMRA Claim

As discussed above, a duty of fair representation claim is not cognizable against individual union officials. Consequently, Link's claim against McCarron under section 301 of the LMRA is dismissed with prejudice as against this defendant. To the extent that Link can bring this claim against a proper party defendant, he may do so.

### 4. ADA Claim

Because an individual cannot be held liable for a violation of the ADA, Link's ADA claim against McCarron is dismissed with prejudice.

III.  Leave to Amend

Leave to amend should be freely granted unless amendment would be futile. See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir.), cert. denied, 464 U.S. 822 (1983) (futile amendments should not be permitted); In re Silicon Graphics, Inc., 183 F.3d 970, 991 (9th Cir. 1999) (denying leave to amend because defects in the pleadings could not be cured by amendment).

A.  LMRA Claim

As discussed above, Link cannot properly maintain an LMRA claim against the defendants named in his complaint because individual union officials, agents and employees cannot be sued for a breach of the duty of fair representation. However, the court grants Link leave to amend his section 301 claim to the extent that he can bring such a claim against a proper entity—such as a union. The court points out that the statute of limitations for an action brought under section 301 of the LMRA, 29 U.S.C. section 185, is six months. Kalombo v. Hughes Mkt., Inc., 886 F.2d 258, 259 (9th Cir. 1989) (citations omitted). As a general rule, the six-month statute of limitations begins to run "when the employee 'discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation].'" Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir. 1986). Therefore, in amending his section 301 claim, Link must state with specificity the dates on which the alleged breaches of the duty of fair representation occurred such that the court can determine from the face of the complaint whether his claim is barred by the six-month statute of limitations.

B.  ADA Claim

As discussed above, Link cannot bring an ADA claim against the individual defendants named in his complaint because the ADA does not provide for individual liability. However, the court grants Link leave to amend his ADA claim to the extent that he can properly bring such a claim against a "covered entity." In other words, Link can only bring such a claim against an

17

entity—an employer, an employment agency, a labor organization, or a joint labor-management committee— that is subject to the provisions of the ADA. However, the court notes that before Link may seek judicial relief for a violation of Title I of the ADA, he must first exhaust available administrative remedies. See 42 U.S.C. § 12117; see also Deppe v. United Airlines, 217 F.3d 1262, 1266–67 (9th Cir. 2000). Adequate exhaustion under Title I entails, *inter alia*, the filing of an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") and the acquisition of an EEOC "right-to-sue" letter.[5] Id.

CONCLUSION

For the reasons stated above, the court GRANTS defendants' motion to dismiss. Plaintiff is ordered to file an amended complaint, according to the rulings set forth above, within 45 days of this order.

IT IS SO ORDERED.

Dated: May 17, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

# **ENDNOTES**

1. The precise nature and legal status of the various "committee" entities (the Apprenticeship Training Program, the Carpenters Training Committee, and the Carpenters Regional Council) is unclear from the current pleadings. Plaintiff's amended complaint, to the extent it asserts claims against the committee defendants and their respective organizations, should clarify the legal status of the various individuals and entities and explain why they are proper parties to the action.

2. Unless otherwise specified, background facts are taken from plaintiff's complaint, and are assumed to be true for purposes of this motion only.

3. Defendant McCarron, the President of the United Brothers of Carpenters and Joiners of America, has filed a separate motion to dismiss that will be considered infra.

4. Section 102 provides that "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States . . . ." 29 U.S.C. § 412.

5. The court further notes that "[a] complainant is required to file a charge with the EEOC within 180 days of the last act of alleged discrimination, unless the complainant initially institutes proceedings with a state or local agency, in which case the EEOC charge must be filed within 300 days." Henson v. Lassen County, No. Civ. 05-1099 FCD KJM, 2006 U.S. Dist. LEXIS 6838, at *33–34 (E.D. Cal. Feb. 23, 2006) (citing 42 U.S.C. §§ 2000e-5, 12117(a)).